**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 -------------------------------------------------------------------- Xo

ALISON C. ABULAFIA, PETER W. BEADLE,
JESSE LAYMON, MARIA D. KAUFER, and
RICK ECHEVARRIA,

                                        Plaintiffs,                          Case No. 20-cv-3547

                 - against -

                                                                          **VERIFIED COMPLAINT**
STEVEN RICHMAN individually and as General
Counsel of the NYC BOARD OF ELECTIONS,
MICHAEL RYAN, as Executive Director of the
NYC Board of Elections, JOHN WM. ZACCONE, as
President of the NYC Board of Elections,
PATRICIA ANNE TAYLOR, as Secretary of the NYC
Board of Elections, and JOSE MIGUEL ARAUJO,
MIGUELINA CAMILO, JOHN FLATEAU,
MICHAEL MICHEL, SIMON SHAMOUN,
ROBERT SIANO,TIFFANY TOWNSEND, and
FREDERIC M. UMANE, as Commissioners of the NYC
Board of Elections, and the NYC BOARD OF
ELECTIONS,

                                        Defendants.

 -------------------------------------------------------------------- X

        Plaintiffs, as and for their Verified Complaint, allege the following by their undersigned

attorneys:

                                        **INTRODUCTION**

        1.      Plaintiffs bring this action for immediate injunctive relief in order to address the

violation of their rights, as candidates and voters, to appear on New York's June 23, 2020

Democratic Party Primary ballot. It has been 35 years since this court warned the NYC Board of

Elections about utilizing overly technical ballot access rules in order to prevent qualified

candidates form appearing on the ballot. In 1985, in *Farrell v. Board of Elections in City of New

York*, 1985 WL 2339, at *8–9, Judge Keenan placed a Mayoral candidate, Herman Farrell, on the

ballot, even though he had failed to file a proper "Cover Sheet" when he filed his designating petitions. Judge Keenan held:

> In this case, there is no integrity interest asserted. The dangers of fraud or inherent prejudice present in the cases discussed above do not exist. There was simply an innocent and inconsequential violation of a technical rule, a violation by which Mr. Farrell had nothing to gain. The Board of Elections had no problem logging in the volume or tallying its signatures. The Intervenors had no difficulty reviewing the volume and making objections to specific signatures therein. There was no confusion, no prejudice and no threat to the integrity of the system.

> In fact, not only is the integrity of the system not jeopardized by excluding Mr. Farrell from the ballot, it may be jeopardized by not putting him on ballot. When inconsequential violations are used to justify the exclusion of a candidate with substantial public support from the ballot, it is likely to undermine, rather than bolster, public confidence in the integrity of the system. To the extent Mr. Farrell's exclusion alienates a significant segment of the public, it will further discourage broadbased political participation which is essential to the vitality of any democracy.

> Absent a threat to the integrity of the electoral process, the State law at issue is not protecting the right to vote in any meaningful way. Therefore, it does not merit the deference, implicit in application of the rational relationship test, accorded state laws protecting integrity of the system. Instead, the burden shifts to the State to establish that the requirement that a cover sheet omission invalidates every signature in the accompanying volume, without affording the candidate the opportunity to correct the omission, is necessary to a compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972); see *Unity Party v. Wallace*, 707 F.2d at 62 (2d Cir. 1983) ('the Constitution condemns . . . restrictions that, without compelling justification, significantly encroach upon the rights to vote and to associate for political purposes'); *Gangemi*, 506 F.2d at 572 ('a state must determine that its decision to deny a person access to the ballot advances a compelling interest by the least drastic means . . .'). As discussed under the roughly equivalent Anderson test, the State cannot meet its burden in this regard and the fatablity requirement must fall.

> Even if the rational relationship test is proper, however, the fact that the cover sheet rule has a concededly legitimate purpose is not the end of the inquiry. In *Richards v. Lavelle*, 620 F.2d 144, 147–49 (7th Cir. 1980) (*per curiam*), the Seventh Circuit was called upon to evaluate the validity of an Illinois statute under which a candidate was excluded

from the ballot because he submitted more than the maximum number of signatures allowable in support of his nomination. The court found that 'the maximum limitation [rule] serves the legitimate state interest of providing an orderly election procedure, especially in light of the time constraint placed on the [Board of Elections].' *Id.* at 147. Nonetheless, the Court found that imposing the sanction of removal for breach of the rule was 'irrational,' *id.* at 148, and 'the state may not serve a legitimate end through irrational means,' *Id*.

The Court grounded its finding of irrationality on the fact that removal from the ballot (i) penalized not only the candidate, but the voters who signed his Petition and thus inadequately considered the interests of those voters, and (ii) while removal certainly spared the Board of Elections some administrative burden, it did so by 'needlessly infringing other valid interest.' *Id*. The court went on the describe the rational alternative sanctions proposed by the district court, not under the 'least restrictive alternative' doctrine of the strict scrutiny test, but for purposes of comparison. *Id.* at 148–49.

The Board's decision to treat Mr. Farrell's cover sheet omission as a fatal defect does not pass muster under the rational relationship test, if that test is to have any meaning. There is no doubt that the cover sheet requirements serve a legitimate state purpose. The sanction of excluding Mr. Farrell from the ballot, however, is not rationally related to the state's legitimate purpose. The sanction is irrational because it fails to adequately consider the rights of Mr. Farrell's supporters and overemphasizes the state's interest in administrative efficiency. The availability of simple alternatives belies any asserted administrative need to so impinge on the fundamental rights of Mr. Farrell's supporters.

2. Thirsty five years later, even in the midst of the COVID-19 pandemic, the NYC Board of Elections, led by its General Counsel, Defendant Steven Richman, has returned NYC ballot access to that period in 1985 when the *Farrell* case was filed, directing the NYC Board, with the support of its compliant defendant Commissioners, to knock as many candidates off the ballot as possible, probably several hundred, including the Plaintiffs here, all of whom circulated a sufficient number of Complaints to get on the ballot, filed them with the Board, and then found themselves disqualified because a Zip Code was wrong on a cover sheet, or because the wrong volume number was written on the cover sheet, and then finding themselves in the midst of a

process where notice got sent to their attorneys' office, despite the COVID-19 lockdown, making a timely "cure" impossible.

3.    State Court remedies here are illusory, and like in Judge Torres' decision of May 5, 2020, in *Yang v. NY State Board of Elections*, an immediate injunction is needed to restore these candidates to the ballot.

## JURISDICTION

4.    This Court's jurisdiction is invoked pursuant to 28 USC §1331 and 42 USC §1983.

## PARTIES

5.    Plaintiffs ALISON C. ABULAFIA, PETER W. BEADLE, JESSE LAYMON, and MARIA D. KAUFER, at all times mentioned, were and are now duly qualified voters of the State of New York residing at and entitled to vote in Queens, New York.

6.    Plaintiffs at all times mentioned herein are duly qualified and enrolled members of the Democratic Party. Plaintiffs are candidates (for purposes of this Complaint) for office as follows:

   a.    Alison C. Abulafia is a candidate for Female District Leader in the 28th Assembly District Part B.

   b.    Peter W. Beadle is a candidate for Male District Leader in the 28th Assembly District Part B.

   c.    Jesse Laymon is a candidate for Democratic State Committee and Delegate to the Democratic Party Judicial Convention in the 37th Assembly District.

   b.    Maria D. Kaufer is a candidate for the Democratic Party Judicial Convention in 28th Assembly District.

   c.    Plaintiff Rick Echevarria is a candidate for City Council in the 35th City Council District in Brooklyn, New York

7.      Each plaintiff is also an enrolled Democratic Party voter, entitled to vote in the primary election in which he or she or they are a candidate. All of them are candidates who take issue with what they describe as the "establishment Democratic Party leadership." All except Mr. Echevarria are running for positions within the Democratic Party is an effort to change its policies and positions; Mr. Echevarria is looking to accomplish the same goal by running for office. Each one has the support of hundreds of voters who signed their designating petitions so that their names could appear on the ballot, all of whom support them because of their position on issues within and outside of the Democratic Party.

8.      Defendant NYC Board of Elections (the "Board") is constituted pursuant to the New York State Election Law and is charged with the responsibility of administering all elections within the City of New York including the positions Plaintiffs are running for. The Board is located at 32 and 42 Broadway, New York, New York, and all of its records concerning all filings for the elections at issue here are housed at 42 or 32 Broadway, New York, New York, and all of the actions taken occurred in New York County. Venue in New York County is appropriate.

9.      Defendant Steven Richman is General Counsel of the Board.

10.     Defendant Michael Ryan is the Executive Director of the Board.

11.     Defendants John Wm. Zaccone is President of the Board and a Commissioner, Patricia Anne Taylor is Secretary of the Board and a Commissioner, and Jose Miguel Araujo, Miguelina Camilo, John Flateau, Michael Michel, Simon Shamoun, Robert Siano, Tiffany Townsend, and Frederic M. Umane are Commissioners of the Board.

## FACTS

12.     Pursuant to various provisions of the Election Law of the State of New York, the Board set a petitioning period which began on February 26, 2020 and ended on April 2, 2020,

and required candidates for the Democratic nomination for the offices of Democratic Party State Committee Member and/or Delegate to the Judicial Convention from an Assembly District, or for Male or Female District Leader from a Part of an Assembly District, to file 500 valid signatures of enrolled Democrats in order to be on the ballot for the primary to be held on June 23, 2020. Candidates for the City Council were required to file 450 signatures pursuant to the NYC Charter.

13.     On March 14, 2020, due to the COVID-19 emergency, Governor Andrew Cuomo issued an Executive Order (No. 202.2), which stated in relevant part that

> "*by virtue of the authority vested in me by Section 29-A of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule or regulation ... of any agency during a disaster emergency ... I hereby temporarily suspend or modify ... through April 13, 2020 the following ... Article 6 of the Election Law is modified to the extent necessary to reduce required number of signatures on Petitions pursuant to Section 6-136 of such law to 1.5% of the enrolled voters required, or 30% of the stated threshold, whichever is less. Further such provisions are modified to require that gathering of signatures shall br suspended effective Tuesday, March 17, 2020 at 5pm.*"

14.     On Wednesday March 18, 2020, after 5pm the NY State Legislature passed a law which stated:

> *Notwithstanding subdivision 1 of section 6-158 of the election law, a designating Complaint for the June 2020 primary election shall be filed with the appropriate board of elections on March 17 through March 20, 2020 and the political calendar with respect to objections, acceptances, authorizations, declinations, substitutions and the last day to commence an election law article 16 proceeding shall be adjusted accordingly.*

15.     Designating Petitions were timely filed, on March 19, 2020, with the Board of Elections in the City of New York, for each of the Plaintiff-Candidates, except Plaintiff Echevarria, who filed on March 20, 2020, for the positions set forth in Paragraph 2(A)-(E) above, for the Democratic Party Primary Election to be held June 23, 2020.

16.     Plaintiffs are duly qualified to run for election for the positions for which they have been nominated in the June 23, 2020 Democratic Primary. Despite this fact, by notice to Plaintiffs Abulafia and Beadle dated April 17, 2020 and received on April 22, 2020, by notice dated April 17, 2020 and received by Jesse Laymon on April 22, 2020, and by vote of the Commissioners on April 23, 2020 concerning Maria D. Kaufer, and by Notice to Plaintiff Echevarria dated on or about March 30, 2020 and made final on April 22, 2020, that they would not appear on the June 23, 2020 ballot.

**<u>Abulafia and Beadle</u>**

17.     On March 19, 2020 Alison C. Abufalia and Peter W. Beadle filed designating Petitions for Female and Male District Leaders in the 28th Assembly District Part B (Queens). Their Cover Sheet had two volumes listed, one of which was incorrect. (See Exhibit A). The correct volume listed had enough signatures to qualify them for the position (150).

18.     On an unknown date—the 3-Day Cure Letter (Exhibit B) had no date—the Board issued a 3-day Cure Letter and sent it by Express Mail. The envelope indicated that it was mailed on April 3, 2020. The Express Mail was to their Contact Person/Attorney's office. The Cover Sheet also had the Contact Person's home address, and his fax number, but despite the fact that the Governor ordered all non-essential businesses to close on March 19, 2020, BOE staff chose to send the Express Mail to his office, rather than use his home address or his fax. The Contact Person did check his office mail every two days, and when he went on April 10, 2020 in the late afternoon, the Postal Service delivered two Express Mail packages from the BOE, one of which was Ms. Abufalia's and Mr. Beadle's 3 Day Cure Notice. It said that the defect in the cover sheet "may be cured within 3 business days of the date of this letter," but the letter had NO DATE!

19.     On Monday April 13, 2020, at personal risk, the Contact Person personally filed an Amended Cover Sheet (Exhibit C) for Ms. Abufalia and Mr. Beadle with the correct volumes

and noted in the filing that the 3 Day Cure Letter was undated and had not been delivered until April 9, 2010.

20.     On April 22, 2020 Ms. Abufalia and Mr. Beadle received a letter dated April 17, 2020 (Exhibit K) telling them that they had a late cure. The letter did not explain why their Cure was late.

21.     Keeping Ms. Abufalia and Mr. Beadle off the ballot violated NYS Board of Elections Rule 6215.6, which states: *"Construction of rules; substantial compliance (a) Except as specifically set forth herein, these rules shall be liberally construed and technical defects shall be disregarded where there has been substantial compliance and where a strict construction is not required for the prevention of fraud,"* as well as Election Law § 6-134, which provides in relevant part that the "*provisions of this section shall be liberally construed, not inconsistent with substantial compliance thereto and the prevention of fraud.*"

22.     Abulafia and Beadle were not given a proper opportunity to cure, since the letter was undated. It arrived in the Contact Person's office on April 9, 2020 and was found by him there on April 10, 2020. Furthermore, the one correct volume of the designating Petition noted on the cover sheet contained many times the 150 valid signatures required for designation pursuant to Election Law § 6-136(2)(I). A minor error should not entitle the Board of Elections to intervene to an extent where it decides the outcome of an election for a Party position, when the registered and enrolled voters of that Party have spoken as to who they want to see on that ballot.

23.     Here, the original cover sheet substantially complied with the statutory requirements of the Election Law. *Krance v. Chiaramonte*, 87 A.D.3d 669 (2nd Dept. 2011), and the timely Amended Cover Sheet totally complied. Under the NY State Election Law, the transcription of volume numbers is a mere irregularity and not grounds to invalidate the Petition.

See *In Re Magelaner v. Terence Y. Park, et al.,* 32 A.D.3d 487 (2nd Dept. 2006) ( "amended cover sheet was in substantial compliance with the Election Law and the rules promulgated by the Board of Elections of the City of New York (hereinafter the Board) and presented no danger of fraud or confusion either to the Board or to the voters"); see also *Flacks v. Board of Elections in the City of New York*, 109 A.D.3d 423 (1st Dept. 2013), *leave denied,* 21 N.Y.3d 861 (2013) ("it was improper for the Board of Elections to conclude that the scrivener's error was a fatal defect"); *Siems v. Lite*, 307 A.D.2d 1016 (2nd Dept. 2003) ("There is no justification for invalidating the designating Petitions under those rules, which are to be liberally construed (*see 9 NYCRR 6215.6 [a]*), where there has been substantial compliance and there is no evidence of confusion either by potential voters or the Board of Elections."). Similarly, here, there is no fraud or confusion to the Board of Elections or any potential voters.

24.     There is another procedural issue besides the lack of a date on the 3 Day Cure Notice. The Cover Sheet review by the BOE was clearly late. The BOE Rules and Regulations § 6215.7 states: "*(a) Within **two business days** of the receipt of the Petition, the board with whom such Petition was filed shall review the Petition to determine whether the Petition complies with the cover sheet and binding requirements of these regulations. Such review shall be limited to matters apparent on the face of the documents. Such review, and such determination, shall be without prejudice to the determination by the board of objections and specifications of objections filed pursuant to the provisions of the Election Law.* The Regulation goes on to state: *(b) In the event that, upon the review conducted pursuant to subdivision (a) of this section, the board determines that a Petition does not comply with these regulations, the board shall **forthwith** notify the candidate or candidates named on the Petition of its determination and the reasons therefor.* The candidates' Designating Petition and Cover Sheet were filed on March 19, 2020.

The review should have occurred by March 22, 2020. If it did, a Notice mailed on April 3, 2020 is not "forthwith."

25.    Given these facts, and the law, Alison C. Abufalia and Peter W. Beadle should have been placed on the ballot for Female and Male District Leader candidates in the 28th Assembly District Part B. They have filed suit in NY State Supreme Court for this relief (see below at Paragraph 49-50), but is unlikely to receive timely relief or any relief at all. The State remedies are not a fair and measured procedure designed to protect due process, nor are they designed in a way which evaluates outcomes in relation to candidates' and voters' free speech and free associational rights.

26.    If Plaintiffs Abulafia and Beadle are prevented from running on June 23, 2020 they will be deprived of their free speech rights as candidates, and they and other voters will be deprived of the opportunity to express their views by voting for said plaintiffs.

**Jesse Laymon**

27.    Jesse Laymon submitted designating petitions on March 19, 2020 for the positions of Democratic State Committee Member, and Judicial Convention Delegate for the 37th Assembly District. His Cover Sheet (Exhibit D) had the wrong Zip Code; it stated 11206 instead of 11106, which was the Zip Code on his petition. Otherwise, the street address on both was the same.

28.    The Board issued a 3-Day Cure Letter dated April 3, 2020 (Exhibit E). It was sent by Express Mail to his Contact Person/Attorney's office. The Cover Sheet also had the Contact Person's home address, and his fax number, but despite the fact that the Governor ordered all non-essential businesses to close on March 19, 2020, BOE staff chose to send the Express Mail to his office, rather than use his home address or fax. The Contact Person did check his office mail every two days, and when he went on April 10, 2020 in the late afternoon, the Postal

Service delivered two Express Mail packages from the BOE, one of which was Mr. Laymon's 3-Day Cure Notice.

29.     On Monday April 13, 2020, at personal risk, the Contact Person personally filed an Amended Cover Sheet (Exhibit F) for Mr. Laymon with the correct Zip Code and noted in the filing that the 3-Day Cure Letter had not been delivered until April 9, 2010.

30.     On April 22, 2020 Mr. Laymon received a letter dated April 17, 2020 telling him that he had a late cure. See Exhibit L.

31.     Under State Election Law, keeping Mr. Laymon off the ballot violates Rule 6215.6, which states: *"Construction of rules; substantial compliance (a) Except as specifically set forth herein, these rules shall be liberally construed and technical defects shall be disregarded where there has been substantial compliance and where a strict construction is not required for the prevention of fraud."* The typographical error on the Cover Sheet involving a Zip Code is a technical defect which has no impact at all on the election and should have been corrected administratively. "If there is substantial compliance and no evidence of confusion to either the voters or the board of elections, there is no basis to invalidate Petitions for failure to comply with the Petition cover sheet requirements." *Siems v Lite*, 307 AD2d 1016 (2d Dept 2003); see also *Magelaner v Park*, 32 AD3d 487 (2d Dept 2006).

32.     In this case too there is a late processing issue. The Cover Sheet review involving Mr. Laymon, by the BOE was late. RULES AND REGULATIONS § 6215.7 states: "*(a) Within* ***two business days*** *of the receipt of the Petitions the board with whom such Petition was filed shall review the Petitions to determine whether the Petition complies with the cover sheet and binding requirements of these regulations. Such review shall be limited to matters apparent on the face of the documents. Such review, and such determination, shall be without prejudice to the*

*determination by the board of objections and specifications of objections filed pursuant to the provisions of the Election Law."* The Regulation goes on to state: "*(b) In the event that, upon the review conducted pursuant to subdivision (a) of this section, the board determines that a Petition does not comply with these regulations, the board shall **forthwith** notify the candidate or candidates named on the Petition of its determination and the reasons therefor."* Mr. Laymon's designating petitions and Cover Sheet were filed on March 19, 2020. The review should have occurred by March 22, 2020. If it did, a Notice dated April 3, 2020 is not "forthwith."

33.    Given these facts, and the law, Mr. Laymon should be placed on the ballot as a Democratic State Committee Member candidate, and Judicial Convention Delegate candidate, for the 37th Assembly District. He has filed suit in NY State Supreme Court for this relief (see below at Paragraph 49-50), but is unlikely to receive timely relief or any relief at all. The State remedies are not a fair and measured procedure designed to protect due process, nor are they designed in a way which evaluates outcomes in relation to candidates' and voters' free speech and free associational rights.

34.    If Plaintiff Laymon is prevented from running on June 23, 2020 he will be deprived of his free speech rights as a candidate, and he and other voters will be deprived of the opportunity to express their views by voting for said plaintiff.

**Maria D. Kaufer**

35.    Ms. Kaufer was listed on a Petition for Judicial Delegate on the Petition with ID No. QN2000482 (Exhibit G). However, when that Petition was filed she was not included on the Cover Sheet (Exhibit H) for the group of candidates running together for Judicial Delegate positions. Otherwise the Petitions filed, and the Cover Sheet, were in order. This was not a case where there was a "complete disregard" for the procedural rules of the Board, a circumstance in

*Matter of Armwood v. McCloy,* 109 A.D.3d 558 (2d Department 2013). In *Armwood* the candidate's multi-page Petition was unbound and there was no cover sheet whatsoever, which the Court said "*constituted a complete failure to comply with the requirements set forth in 9 NYCRR 6215.1, [and] which may not be cured pursuant to Election Law § 6–134(2) and 9 NYCRR 6215.6.*" Those facts do not square with what happened here.

36.     Here there was no confusion at all. In fact, despite Ms. Kaufer's omission from the Cover Sheet, the Board of Elections Filing Ledger stated, under her name, as a candidate for Judicial Delegate: "Coversheet Separate." See page 109 of the April 9, 2020 Petition Filing Ledger issued by the Board, annexed as Exhibit I.

37.     At no time was Ms. Kaufer sent a Cure Notice. She only became aware of the issue only when alerted, by her attorney, that her name appeared on the "Legal Prima Facie" schedule (a long schedule of candidates whom the Board intended to disqualify during the week of April 20, 2020, published in connection with the April 23, 2020 Commissioners' Hearing addressed to candidates in Queens. (Plaintiffs Abulafia, Beadle, and Laymon, despite a request, were not included on that calendar; they were already considered excluded from the ballot because of the "late cure.")

38.     On April 20, 2020 Ms. Kaufer filed an Amended Cover Sheet, a copy of which is annexed as Exhibit J. This should have cured the problem. The filing, however, was not even considered by the Board at its April 23, 2020 hearing.

39.     The failure in this case to include the candidate's name on the Cover Sheet, should have been curable, and in no way opened the door to potential fraud.

40.     Given these facts, and the law, Ms. Kaufer should be placed on the ballot for Judicial Delegate for the 28th AD for the June 23, 2020 Democratic Primary. She has filed suit in

NY State Supreme Court for this relief (see below at Paragraph 49-50), but is unlikely to receive timely relief or any relief at all. The State remedies are not a fair and measured procedure designed to protect due process, nor are they designed in a way which evaluates outcomes in relation to candidates' and voters' free speech and free associational rights.

41.     If Plaintiff Kaufer is prevented from running on June 23, 2020 she will be deprived of her free speech rights as a candidate, and she and other voters will be deprived of the opportunity to express their views by voting for said plaintiffs.

**Rick Echevarria**

42.     On March 20, 2020 one volume of Petitions designating the Plaintiff as a candidate for election to the NY City Council for the 37th City Council District, which is located in Kings County, in the Democratic Party Primary Election to be held June 23, 2020, was filed with the Board of Elections in the City of New York.

43.     Plaintiff Echevarria is duly qualified to run for election as Candidate for City Council in the 37th City Council District in the June 23, 2020 Democratic Primary. Despite this fact, effective April 22, 2020 the Board ruled Plaintiff off the ballot. On that date Plaintiff was scheduled to have a hearing before the Board on a Clerk's Report (Exhibit M), finding that he did not have the required number of valid signatures to get on the ballot, when the Board declared the issue moot because Plaintiff had a "Cover Sheet violation," *i.e.*, the failure to affix the correct volume number to the Cover Sheet filed along with his designating Petitions, which, the Board alleges, had not been cured in a timely manner.

44.     With respect to the Cover Sheet ID No., as Mr. Echevarria explains in the affidavit annexed as Exhibit N, which was submitted to the Board on April 20, 2020, the Clerk at the desk at the Board office on March 20, 2020, at the time he filed, gave him, at his request, a Volume ID

sticker, with Volume ID KG2001160. He did this after the Cover Sheet and the Petitions had been stamped in, and he would not allow Mr. Echevarria to put **that** sticker on his Petitions or write that number on his Cover Sheet. Instead the Desk Clerk affixed another Volume ID to the Petitions without giving Mr. Echevarria the number, which Mr. Echevarria later learned was KG2001162. On March 24, 2020, the Board sent Mr. Echevarria a 3-Day Cure letter to his home address. But as he explains in his affidavit, he had been exposed to COVID-19 (he had been with his father, who became ill and was hospitalized) and **had to quarantine away from his home, staying at his father's home, for 14 days.** He did not see his mail until well after he returned home, which was way beyond the 3-day cure period. Upon being allowed to return home, and open his mail, he did file, on April 20, 2020, an Amended Cover Sheet with what he believed was his proper Volume Number, KG2001160, which was the ID sticker the Desk Clerk gave him. See Exhibit O. On April 22, 2020, prior to the commencement of the Board hearing on the Clerk's Report, Plaintiff filed a Second Amended Cover Sheet, Exhibit P, with Volume ID KG2001162.

45.     Timeliness issues aside, the original ruling by the Board that the original Cover Sheet "omission" required invalidation of Plaintiff's candidacy, was contrary to law. This ruling by the Board was incorrect. A minor error should not entitle the Board of Elections to intervene to an extent where it decides the outcome of an election in a Party primary, when the registered and enrolled voters of that Party have spoken as to who they want to see on that ballot. In fact, the Board has ruled all but one candidate in this primary off the ballot, although several have now been placed back on by a ruling concerning the number of signature required for filing (which the Board has appealed).

46.     Under NY State Election Law this ruling was contrary to § 6-134, which provides in relevant part that the "*provisions of this section shall be liberally construed, not inconsistent with substantial compliance thereto and the prevention of fraud.* "

47.     In Plaintiff Echevarria's case, the original Cover Sheet substantially complied with the statutory requirements of the Election Law. *Krance v. Chiaramonte*, 87 A.D.3d 669 (2nd Dept. 2011). The omission of the volume number in a circumstance where a filer gets their Volume ID at the filing counter, especially given the accelerated and expedited filing period (the period was moved up two weeks, and was shortened from four days to two days) is a mere irregularity and not grounds to invalidate the Petition. See *In Re Magelaner v. Terence Y. Park, et al.,* 32 A.D.3d 487 (2nd Dept. 2006) ( "amended cover sheet was in substantial compliance with the Election Law and the rules promulgated by the Board of Elections of the City of New York (hereinafter the Board) and presented no danger of fraud or confusion either to the Board or to the voters"); see also *Flacks v. Board of Elections in the City of New York*, 109 A.D.3d 423 (1st Dept. 2013), *leave denied*, 21 N.Y.3d 861 (2013) ("it was improper for the Board of Elections to conclude that the scrivener's error was a fatal defect"); *Siems v. Lite*, 307 A.D.2d 1016 (2nd Dept. 2003) ("There is no justification for invalidating the designating Petitions under those rules, which are to be liberally construed (*see 9 NYCRR 6215.6 [a]*), where there has been substantial compliance and there is no evidence of confusion either by potential voters or the Board of Elections."). Similarly, here, there is no fraud or confusion to the Board of Elections or to any potential voters. At all times the Board knew who the candidate was and which volumes his Cover Sheet was to cover.

48.     General and Specific Objections were filed against Plaintiff's Designating Petitions. On April 7, 2020 a Clerk's Report was issued (Exhibit O) which had two findings. The first was that Mr. Echevarria had only 218 valid signatures, short of the 270 which the Clerk's

Report stated was needed for a valid filing. (270 was 30% of the number set forth in the State Election Law for City Council positions. Brooklyn Supreme Court has now lowered that number to 132, which is 30% of the number required by the NYC Charter) It also found that the candidate was not registered or enrolled from the address listed on the Designating Petition.

49.     According to the Clerk's Report, 67 of the "bad" signatures were to be omitted because "Date of Signature After First Day to Circulate." That is not a valid reason; all signatures must be gathered after the first day to circulate. That should have been the end of the report, especially since the Board requires precision of candidates, and must be held to its own standards. But we will assume that the Clerk meant that line to read as "Date of Signature After **Last** Day to Circulate." In fact, an examination of the sheets involved shows that not to be true. The signatures were all dated on or before 5pm on March 17, 2020. The **witness statement was signed after** the 17th. But nothing in the Election Law prohibits a witness from signing her statement after the cutoff for signature collection. That is clearly what occurred here. With those 67 signatures added back in, Mr. Echevarria met the 270 signature threshold (which has now been reduced to 135).

50.     With respect to the address, Mr. Echevarria did correct his address on April 20, 2020 and submitted an affidavit about the Petition address being his place of residency since February 15, 2020. The affidavit is attached as Exhibit L. State Courts are forgiving of incorrect addresses where candidates move proximate to Petitioning (*Matter of Ferris v Sadowski*, 45 N.Y.2d 815 (1978). There the Court of Appeals stated: "*The purpose of inclusion of the residence address of the candidate (Election Law, § 6-132, subd 1) is not only to facilitate the processing of his Petition by the Board of Elections and to ease the task of one checking his qualification to run, but perhaps most important to assure that the signers of his Petition are*

17

*aware of the identity of their candidate. Where, as here, there is no proof of any intention on the part of the candidate or of those who have solicited signatures on his behalf to mislead or confuse, and no evidence that the inaccuracy did or would lead or tend to lead to misidentification or confusion on the part of those invited to sign the Petition or seeking to verify his qualification, we hold that there was warrant for the conclusion that the Petition should not be invalidated.*" Here, Mr. Echevarria moved on about February 15, 2020 just before Petitioning started, and his current address is in the City Council District.

51.     Had the Board properly reviewed the Clerk's Report it would have found that Plaintiff had enough valid signatures to remain on the ballot.

52.     Given these facts, and the law, Mr. Echevarria should be placed on the ballot as a Candidate for the Democratic nomination to the NY City Council, for the 37th City Council District. He has filed suit in NY State Supreme Court for this relief (see below at Paragraph 49-50), has so far been denied relief, and is unlikely to receive timely relief or any relief at all. The State remedies are not a fair and measured procedure designed to protect due process, nor are they designed in a way which evaluates outcomes in relation to candidates' and voters' free speech and free associational rights.

53.     If Plaintiff Echevarria is prevented from running on June 23, 2020 he will be deprived of his free speech rights as a candidate, and he and other voters will be deprived of the opportunity to express their views by voting for said plaintiff.

**STATE COURT LITIGATION**

54.     Plaintiff Echevarria has filed suit in State Supreme Court under the State Election Law. He has been denied relief (Exhibit O) because he did not file suit within the three days that he

was ruled off the ballot (the Court does not specify what date that is). An appeal under the Election Law seems fruitless since the Court ruled that the 3 day time limit for filing suit was jurisdictional.

55.     The remaining Plaintiffs have filed suit in NY State Supreme Court (Exhibit P), and a hearing has been set for May 11, 2020. However, the Order to Show Cause, though submitted on April 24, 2020, with a copy of it and the Petition served on Defendant Board, was not signed until April 28, 2020 in the afternoon, requiring service by April 28, 2020. Plaintiffs' counsel did not see the email with the signed order until after midnight on April 29, 2020, when it was served. The Supreme Court has refused to hear an application to extend the time for service, *nunc pro tunc*, and the Board has treated the Order as a nullity, disobeying its direction to not certify the ballot in the various Queens races involved.

## IRREPARABLE INJURY

56.     Upon information and belief, the ballots will be printed on or before May 12, 2020 so that they may be sent out to voters who request absentee ballots. In this election cycle, that can be expected to be a majority of voters.

57.     Unless the Board is not restrained from deleting Plaintiffs from the ballot, they will be deprived of their constitutional rights as candidates and voters, an irreparable injury.

58.     No prior application for the relief sought herein has been made other than be the actions discussed above.

## AS AND FOR A FIRST CAUSE OF ACTION

*(Application of the Statute violated US Constitution First Amendment;*
*New York State Constitution)*

59.     Plaintiffs hereby repeat, re-allege, and incorporate by reference all of the facts stated in foregoing paragraphs.

60.     Each of the Plaintiffs is a voter who wishes to vote for themself, and for others who espouse similar political beliefs.

61.     Under the First Amendment, and the Free Speech and Free Suffrage provisions of the New York State Constitution, laws and actions under the law which burden rights of access to the ballot must survive strict scrutiny. In other words, the state actors must advance compelling, precise interest to justify denial of access to the ballot, and the mechanism to forward that interest must be narrowly tailored to that interest, and further must be the least restrictive alternative available to serve that same interest.

62.     Defendants' acts and omissions as detailed herein fail to meet that standard in ways including, but not limited to the following: Defendants have failed to use the least restrictive alternative to forward the interests represented by their alleged, declared interest in preventing election fraud and confusion of those who are voting.

63.     Defendants' removal of Plaintiffs from the June Primary ballot, and the deprivation of their right to vote for themselves, was therefore not narrowly tailored to any applicable state interest.

64.     As a result of the acts and omissions complained of herein, Plaintiffs suffered a deprivation of their Federal and State Constitutional Free Speech Right, and their Suffrage Rights Under the NY State Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION
*(Deprivation of Constitutional rights without due process)*

65.     Plaintiffs hereby repeat, re-allege, and incorporate by reference all facts stated in the foregoing paragraphs.

66.     The Election Law and the BOE Rules, as applied violated Plaintiffs' First and Fourteenth Amendment Constitutional Rights, and their State Constitutional rights, in that without good and sufficient reason, and without utilizing the least restrictive means to address the public welfare, Plaintiffs were removed from the ballot for the Democratic Primary after they

had filed more than the sufficient number of signatures from qualified voters to have them declared qualified to appear on that ballot. They were, despite that fact, removed from the ballot arbitrarily and capriciously, and without meaningful due process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth in the annexed Order to Show Cause, staying the finalization of the ballots in the 28th and 37th Assembly Districts, and the 37th City Council District, and enter a preliminary and permanent injunction

a.      declaring valid the Petitions designating

1.      Plaintiff-Candidate, Alison C. Abulafia, as a Candidate for the Female District Leader Position in the 28th Assembly District Part B, Queens County, New York, in the Democratic Party Primary Election to be held June 23, 2020;

2.      Plaintiff-Candidate, Peter W. Beadle, as a Candidate for the Male District Leader Position in the 28th AD Part, Queens County, New York, in the Democratic Party Primary Election to be held June 23, 2020;

3.      Plaintiff-Candidate, Jesse Laymon, as a Democratic State Committee and Delegate to the Democratic Party Judicial Convention in the 37th Assembly District, Queens County, New York, in the Democratic Party Primary Election to be held June 23, 2020; and

4.      Plaintiff-Candidate, Marie D. Kaufer, as a Candidate for the for the Democratic Party Judicial Convention in 28th Assembly District, Queens County, New York, in the Democratic Party Primary Election to be held June 23, 2020;

5.      Plaintiff, Rick Echevarria, as a Candidate for City Council in the 37th City Council District in Brooklyn, New York, in the Democratic Party Primary Election to be held June 23, 2020;

      b.      issuing a preliminary and permanent injunction prohibiting Respondent Board of Elections of the City of New York from failing to place the names of Alison C. Abulafia, Peter W. Beadle, Jesse Laymon, Maria D. Kaufer, and Rick Echevarria upon voting machines and ballots to be used at the Democratic Primary Election in the appropriate jurisdictions, to be held on June 23, 2020;

      c.      granting such other relief as the Court may deem appropriate; and

      d.      awarding costs and attorneys' fees.

Dated: May 6, 2020

                                      Respectfully submitted,

                                        ADVOCATES FOR JUSTICE,
                                        CHARTERED ATTORNEYS
                                        Attorneys for Plaintiffs

                                      By: /s/ *Arthur Z. Schwartz*
                                            Arthur Z. Schwartz
                                          225 Broadway, Suite 1902
                                          New York, New York 10007
                                          Phone: 212-285-1410
                                          Fax: 212-285-1410
                                          Email: aschwartz@afjlaw.com

## **VERIFICATION**

Arthur Z. Schwartz, an attorney at law, affirms that he is counsel to Plaintiffs, that he has personal knowledge of the facts as set forth herein, that he has read the foregoing Petition and knows the contents thereof; the same are true to his own knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters, he believes it to be true.

Dated: May 6, 2020

/s/ *Arthur Z Schwartz*

Arthur Z. Schwartz