**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------Xo

ALISON C. ABULAFIA, PETER W. BEADLE,
JESSE LAYMON, MARIA D. KAUFER, and
RICK ECHEVARRIA,

                         Plaintiffs,                  Case No. 20-cv-3547

       - against -                                 **DECLATION OF**
                                                                  **ARTHUR Z. SCHWARTZ**

STEVEN RICHMAN individually and as General    **IN SUPPORT OF**
Counsel of the NYC BOARD OF ELECTIONS,        **MOTION FOR A TRO**
MICHAEL RYAN, as Executive Director of the      **AND PRELIMINARY**
NYC Board of Elections, JOHN WM. ZACCONE, as  **<u>INJUNCTION</u>**
President of the NYC Board of Elections,
PATRICIA ANNE TAYLOR, as Secretary of the NYC
Board of Elections, and JOSE MIGUEL ARAUJO,
MIGUELINA CAMILO, JOHN FLATEAU,
MICHAEL MICHEL, SIMON SHAMOUN,
ROBERT SIANO,TIFFANY TOWNSEND, and
FREDERIC M. UMANE, as Commissioners of the NYC
Board of Elections, and the NYC BOARD OF
ELECTIONS,

                        Defendants.
------------------------------------------------------------------------X

      Arthur Z, Schwartz, an attorney at law, declares under penalty of perjury.

      1. On behalf of plaintiffs we submit this declaration in support of the issuance of a TRO and preliminary/permanent injunction placing 5 candidates back on the ballot in the June 23, 2020 Democratic Primary. Four are running for Democratic Party positions, one is running for NYC Council. All five have been removed from the ballot because although they filed a sufficient number of signatures to be candidates, they purportedly made errors on the Cover Sheets used to file their petitions with the Defendant NYC Board of Elections. One candidate had a typographical error in his zip code. Two who had filed two volumes of supporting petitions were eliminated because they transposed the ID numbers of their petitions on the Cover Sheet. One had her name

1

missing from a cover sheet which listed a group of candidates running for the Judicial Nominating Convention. And one filed a Cover Sheet which did not have the volume number which had been given to him on the day he filed. None of these errors deprived the Board or the voters of knowing who had filed petitions for what, and none of these errors had any relationship to fraud. Largely due to circumstances arising out of the COVI-19 lockdown there errors were not "cured" (Board of Elections lexicon) in a timely manner. Subsequent State Court litigation, which did not involve the Constitutional issues raised here, have been unavailing.

2. It has been 35 years since this court warned the NYC Board of Elections about utilizing overly technical ballot access rules in order to prevent qualified candidates form appearing on the ballot. In 1985, in *Farrell v. Board of Elections in City of New York*, 1985 WL 2339, at *8–9,(annexed as Exhibit A)  Judge Keenan placed a Mayoral candidate, Herman Farrell, on the ballot, even though he had failed to file a proper "Cover Sheet" when he filed his designating petitions. Judge Keenan held:

> In this case, there is no integrity interest asserted. The dangers of fraud or inherent prejudice present in the cases discussed above do not exist. There was simply an innocent and inconsequential violation of a technical rule, a violation by which Mr. Farrell had nothing to gain. The Board of Elections had no problem logging in the volume or tallying its signatures. The Intervenors had no difficulty reviewing the volume and making objections to specific signatures therein. There was no confusion, no prejudice and no threat to the integrity of the system.
>
> In fact, not only is the integrity of the system not jeopardized by excluding Mr. Farrell from the ballot, it may be jeopardized by not putting him on ballot. When inconsequential violations are used to justify the exclusion of a candidate with substantial public support from the ballot, it is likely to undermine, rather than bolster, public confidence in the integrity of the system. To the extent Mr. Farrell's exclusion alienates a significant segment of the public, it will further discourage broadbased political participation which is essential to the vitality of any democracy.
>
> Absent a threat to the integrity of the electoral process, the State law at issue is not protecting the right to vote in any meaningful way. Therefore, it does not merit the deference, implicit in application of the rational relationship test, accorded state laws protecting integrity of the system. Instead, the burden shifts to the State to establish that the

requirement that a cover sheet omission invalidates every signature in the accompanying volume, without affording the candidate the opportunity to correct the omission, is necessary to a compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972); see *Unity Party v. Wallace*, 707 F.2d at 62 (2d Cir. 1983) ('the Constitution condemns . . . restrictions that, without compelling justification, significantly encroach upon the rights to vote and to associate for political purposes'); *Gangemi*, 506 F.2d at 572 ('a state must determine that its decision to deny a person access to the ballot advances a compelling interest by the least drastic means . . .'). As discussed under the roughly equivalent Anderson test, the State cannot meet its burden in this regard and the fatablity requirement must fall.

Even if the rational relationship test is proper, however, the fact that the cover sheet rule has a concededly legitimate purpose is not the end of the inquiry. In *Richards v. Lavelle*, 620 F.2d 144, 147–49 (7th Cir. 1980) (*per curiam*), the Seventh Circuit was called upon to evaluate the validity of an Illinois statute under which a candidate was excluded from the ballot because he submitted more than the maximum number of signatures allowable in support of his nomination. The court found that 'the maximum limitation [rule] serves the legitimate state interest of providing an orderly election procedure, especially in light of the time constraint placed on the [Board of Elections].' *Id.* at 147. Nonetheless, the Court found that imposing the sanction of removal for breach of the rule was 'irrational,' *id.* at 148, and 'the state may not serve a legitimate end through irrational means,' *Id*.

The Court grounded its finding of irrationality on the fact that removal from the ballot (i) penalized not only the candidate, but the voters who signed his Petition and thus inadequately considered the interests of those voters, and (ii) while removal certainly spared the Board of Elections some administrative burden, it did so by 'needlessly infringing other valid interest.' *Id*. The court went on the describe the rational alternative sanctions proposed by the district court, not under the 'least restrictive alternative' doctrine of the strict scrutiny test, but for purposes of comparison. *Id.* at 148–49.

The Board's decision to treat Mr. Farrell's cover sheet omission as a fatal defect does not pass muster under the rational relationship test, if that test is to have any meaning. There is no doubt that the cover sheet requirements serve a legitimate state purpose. The sanction of excluding Mr. Farrell from the ballot, however, is not rationally related to the state's legitimate purpose. The sanction is irrational because it fails to adequately consider the rights of Mr. Farrell's supporters and overemphasizes the state's interest in administrative efficiency. The availability of simple alternatives belies any asserted administrative need to so impinge on the fundamental rights of Mr. Farrell's supporters.

3. Thirsty five years later, despite statutory changes which allow at best a two- day period to correct cover sheets, even in the midst of the COVID-19 pandemic, the NYC Board of Elections, led by its General Counsel, Defendant Steven Richman, has returned NYC ballot access to that period in 1985 when the *Farrell* case was filed, directing the NYC Board, with the support of its compliant defendant Commissioners, to knock as many candidates off the ballot as possible, probably several hundred, including the Plaintiffs here, all of whom circulated a sufficient number of Complaints to get on the ballot, filed them with the Board, and then found themselves disqualified because a Zip Code was wrong on a cover sheet, or because the wrong volume number was written on the cover sheet, and then finding themselves in the midst of a process where notice got sent to their attorneys' office, despite the COVID-19 lockdown, making a timely "cure" impossible.

4. State Court remedies here are illusory, and like in Judge Torres' decision of May 5, 2020, in *Yang v. NY State Board of Elections*, (Exhibit B) an immediate injunction is needed to restore these candidates to the ballot.

5. The verified Complaint sets out this story in detail, but suffice it to say that Plaintiffs at all times mentioned herein are duly qualified and enrolled members of the Democratic Party. Plaintiffs are candidates for office as follows:

    a.    Alison C. Abulafia is a candidate for Female District Leader in the 28th Assembly District Part B.

    b.    Peter W. Beadle is a candidate for Male District Leader in the 28th Assembly District Part B.

    c.    Jesse Laymon is a candidate for Democratic State Committee and Delegate to the Democratic Party Judicial Convention in the 37th Assembly District.

      b.      Maria D. Kaufer is a candidate for the Democratic Party Judicial Convention in 28th Assembly District.

      c.      Plaintiff Rick Echevarria is a candidate for City Council in the 35th City Council District in Brooklyn, New York

6. Each plaintiff is also an enrolled Democratic Party voter, entitled to vote in the primary election in which he or she or they are a candidate. All of them are candidates who take issue with what they describe as the "establishment Democratic Party leadership." All except Mr. Echevarria are running for positions within the Democratic Party is an effort to change its policies and positions; Mr. Echevarria is looking to accomplish the same goal by running for office. Each one has the support of hundreds of voters who signed their designating petitions so that their names could appear on the ballot, all of whom support them because of their position on issues within and outside of the Democratic Party.

**STATE COURT LITIGATION**

7. Plaintiff Echevarria has filed suit in State Supreme Court under the State Election Law. He has been denied relief (Complaint Exhibit O) because he did not file suit within the three days that he was ruled off the ballot (the Court does not specify what date that is), a period when he was in quarantine after exposure to COVID-19.. An appeal under the Election Law seems fruitless since the Court ruled that the 3 day time limit for filing suit was jurisdictional and held that COVID-19 provided no excuse for not taking immediate action in response to a Board notice that Mr. Echevarria did not receive at his quarantine location, and did not learn about until weeks later.

8. The remaining Plaintiffs have filed suit in NY State Supreme Court (Complaint Exhibit P), and a hearing has been set for May 11, 2020. However, the Order to Show Cause, though submitted on April 24, 2020, with a copy of it and the Petition served on Defendant Board, was not signed until April 28, 2020 in the afternoon, requiring service by April 28, 2020. Plaintiffs' counsel

did not see the email with the signed order until after midnight on April 29, 2020, when it was served. The Supreme Court has refused to hear an application to extend the time for service, *nunc pro tunc*, and the Board has treated the Order as a nullity, disobeying its direction to not certify the ballot in the various Queens races involved.

**IRREPARABLE INJURY**

9. Upon information and belief, the ballots will be printed on or before May 9, 2020 so that they may be sent out to voters who request absentee ballots. In this election cycle, that can be expected to be a majority of voters.

10. Unless the Board is not restrained from deleting Plaintiffs from the ballot, they will be deprived of their constitutional rights as candidates and voters, an irreparable injury.

11. No prior application for the relief sought herein has been made other than be the actions discussed above.

**PLAINTIFFS' CLAIMS**

12. Plaintiffs have made the following claims

    a. First Amendment

        i. Each of the Plaintiffs is a voter who wishes to vote for themselves, and for others who espouse similar political beliefs.

        ii. Under the First Amendment, and the Free Speech and Free Suffrage provisions of the New York State Constitution, laws and actions under the law which burden rights of access to the ballot must survive strict scrutiny. In other words, the state actors must advance compelling, precise interest to justify denial of access to the ballot, and the mechanism to forward that interest must be narrowly tailored to that interest, and further must be the least restrictive alternative available to serve that same interest.

        iii. Defendants' acts and omissions as detailed herein fail to meet that standard in ways including, but not limited to the following: Defendants have failed to use the least

restrictive alternative to forward the interests represented by their alleged, declared interest in preventing election fraud and confusion of those who are voting.

      iv. Defendants' removal of Plaintiffs from the June Primary ballot, and the deprivation of their right to vote for themselves, was therefore not narrowly tailored to any applicable state interest.

      v. As a result of the acts and omissions complained of herein, Plaintiffs suffered a deprivation of their Federal and State Constitutional Free Speech Right, and their Suffrage Rights Under the NY State Constitution.

    b. Deprivation of Constitutional rights without due process

      i. The Election Law and the BOE Rules, as applied violated Plaintiffs' First and Fourteenth Amendment Constitutional Rights, and their State Constitutional rights, in that without good and sufficient reason, and without utilizing the least restrictive means to address the public welfare.

      ii. Plaintiffs were removed from the ballot for the Democratic Primary after they had filed more than the sufficient number of signatures from qualified voters to have them declared qualified to appear on that ballot. They were, despite that fact, removed from the ballot arbitrarily and capriciously, and without meaningful due process.

13. A TRO and Preliminary Injunction is the appropriate remedy. "In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted). "However, a

plaintiff cannot rely on the 'fair ground for litigation' alternative in challenging 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" *Monserrate v. New York State Senate,* 599 F.3d 148, 154 (2d Cir. 2010), *quoting Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989) (the moving party must establish a likelihood of success on the merits), but see *Yang v. Kellner,* Exhibit B at pages 28 -29 *(* "The Court grants the preliminary injunction "to restore the status quo ante." United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939). "The purpose of an injunction [pending litigation] is to guard against a change in conditions which will hamper or prevent the granting of such relief as may be found proper after the trial of the issues. Its ordinary function is to preserve the status quo and it is to be issued only upon a showing that there would otherwise be danger of irreparable injury." Id.; see also Asa v. Pictometry Intern. Corp., 757 F. Supp. 2d 238, 243 (W.D.N.Y.2010) ("[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, i.e., the situation that existed between the parties immediately prior to the events that precipitated the dispute."). Here, the status quo ante is the state of affairs immediately prior to the April 27 Resolution. "'Status quo' does not mean the situation existing at the moment the [lawsuit] is filed, but the 'last peaceable uncontested status existing between the parties before the dispute developed.'" Chobani, LLC v. Dannon Co., Inc., 157 F. Supp. 3d 190, 201 (N.D.N.Y. 2016) (citation omitted) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2948 (2d ed. 1995)).*Even if viewed as mandatory  "district court may enter a mandatory preliminary injunction against the government if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Mastrovincenzo v. City of New York,* 435 F.3d 78, 89 (2d Cir. 2006), *citing No Spray Coal., Inc. v. City of New York,* 252 F.3d 148, 150 (2d Cir. 2001). Plaintiffs do that here.

8

14. This case meets those exacting criteria. As explained in more detail in our Memorandum of Law, the substantive legal theories here are meritorious and the challenged actions are both unconstitutional and an improper exercise of discretion. "'No right is more precious in a free country than that of having a voice in the election of those who make the laws … The right to vote remains, at bottom, a federally protected right … The federal protections of the right to vote also include those against interference from the states." *Rossito-Canty v. Cuomo,* 86 F. Supp. 3d 175, 180-1 (E.D.N.Y. 2015) (quotation marks and citations omitted). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius,* 380 U.S. 528, 537 (1965). Nor are there any factual disputes. The Plaintiffs have each expended substantial effort and financial investment obtaining the required number of signatures, in fact risking their health or even lives to do so in order to gain a place on the ballot in the days leading up to the COVID-19 lockdown. Having done everything required by law to gain a place on the ballot, they have now been disenfranchised by application of meaningless bureaucratic red-tape enforced is the nidst of an epidemic as though that epidemic was not going on.

15. As to the relief sought, ordering candidates back on the ballot, and staying the distribution of ballots until that occurs, is a significant part of the Federal Courts' toolkit for redressing improper exclusion of candidates from ballots (and likely the only possible remedy to such wrongs). Farrell v. Board of Elections, 1985 WL 2339 (SDNY 1985)(ordering Mayoral candidate who had not filed a Cover Sheet back on the ballot); *Hadnott v. Amos,* 394 U.S. 358, 365-6 (1969) (ordering new election where a newly passed law required removal of black candidates from the ballot, based on their pre-enactment conduct); *Allen v. State Bd. of Elections*, 393 U.S. 544, 558 (1969) (ordering conduct of new election including candidates

9

excluded by a late change in the requirements to be on the ballot); *Toney v. White,* 488 F.2d 310 (special election ordered combined with next general election date).

16. I have served a copy of the Complaint, the proposed Order to Show Cause, and this Declaration on Steven Kitzinger, of the NYC Corporations Counsel Office, which represents the Board of Elections, and Steven Richman, the Board's General Counsel, and advised them that I would seek Temporary Injunctive Relief on May 7, 2020.

Dated: May 6, 2020

                                        Respectfully submitted,

                                        ADVOCATES FOR JUSTICE,
                                        CHARTERED ATTORNEYS
                                        Attorneys for Plaintiffs

                                        By: /s/ *Arthur Z. Schwartz*
                                            Arthur Z. Schwartz
                                            225 Broadway, Suite 1902
                                            New York, New York 10007
                                            Phone: 212-285-1410
                                            Fax: 212-285-1410
                                            Email: aschwartz@afjlaw.com

## **VERIFICATION**

Arthur Z. Schwartz, an attorney at law, affirms that he is counsel to Plaintiffs, that he has personal knowledge of the facts as set forth herein, that he has read the foregoing Petition and knows the contents thereof; the same are true to his own knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters, he believes it to be true.

Dated: May 6, 2020

/s/ *Arthur Z Schwartz*
Arthur Z. Schwartz